## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | |
|---|---|
| **DAWN SKINNER, Individually and on Behalf of All Others Similarly Situated,** | Case No. 23-cv-10495 |
| | District Judge Thomas L. Ludington |
| **v.** | Magistrate Judge Patricia T. Morris |
| **THE PEPLINKSI GROUP, INC.** | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Plaintiff Dawn Skinner ("Skinner"), the Opt-in Plaintiffs (together with Skinner, the "Plaintiffs") and Defendant The Peplinski Group, Inc. ("Peplinski") (collectively, the "Parties") jointly move approval of the Parties' settlement of the claims at issue in this lawsuit under the Fair Labor Standards Act ("FLSA"). Following approval of the settlement, the Parties will promptly dismiss the lawsuit with prejudice.

1.   **RELEVANT BACKGROUND**

Skinner filed this putative collective action on February 28, 2023, alleging Peplinski failed to pay her and others like her for all overtime hours worked in violation of the FLSA. *See* ECF No. 1. In addition to Skinner, 40 Opt-in Plaintiffs submitted their written consents to become party plaintiffs to the action pursuant to 29 U.S.C. § 216(b). *See* ECF Nos. 5, 21. Plaintiffs generally allege Peplinski required them to remain on-duty during their 30-minute unpaid meal break periods, thereby denying them of overtime wages when Plaintiffs worked over 40 hours in a workweek. *See* ECF No. 1.

Peplinski answered the lawsuit on April 17, 2023. *See* ECF No. 12. Peplinski filed an Amended Answer on May 5, 2023 denying that it violated the FLSA or failed to pay the opt-in Plaintiffs any owed wages and asserting various affirmative defenses. *See* ECF No. 18. Peplinski continues to deny violating the FLSA or failing to pay the opt-in Plaintiffs any owed wages.

Thereafter, and following extensive settlement negotiations between the Parties' counsel, the Parties reached an agreement to resolve Plaintiffs' wage-and-hour claims. *See* ECF No. 30. The Parties now seek the Court's approval of the negotiated Settlement Agreement, as well as an Order governing the final resolution and dismissal of this case.

## 2.   LEGAL STANDARD

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Williams v. Glob. Appliances, LLC*, No. 19-12114, 2020 WL 13815464, at *1 (E.D. Mich. Aug. 20, 2020) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). "[D]istrict courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Scobey v. Gen. Motors, LLC*, No. 20-12098, 2021 WL 5040312, at *2 (E.D. Mich. Oct. 28, 2021) (quoting *Athan v. United States Steel Corp*, 523 F.Supp.3d 960, 964-65 (E.D. Mich. 2021)). "Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F. 2d at 1354.

Generally, the proper procedure for obtaining court approval of a FLSA settlement is for the parties to present the Court with the proposed settlement, on which the Court may enter a stipulated judgment after scrutinizing the settlement for fairness. *See Williams v. K&K Assisted Living LLC*, No. 15-cv-11565, 2016 WL 319596, at *1 (E.D. Mich. Jan. 27, 2016); *Thomas v. Dania Mgmt. Grp., Inc.*, No. 2:18-cv-02771-TLPdkv, 2019 WL 11583347, at *1 (W.D. Tenn. Aug. 30, 2019) (citing *Lynns' Food Stores*, 679 F.2d at 1352-53). If the settlement reflects a reasonable compromise over disputed issues such as FLSA liability or computation of back wages, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

Courts consider five factors when determining whether to approve a FLSA settlement:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Williams v. Alimar Sec., Inc.*, No. 13-cv-12732, 2016 WL 6405798, at *3 (E.D. Mich. Oct. 31, 2016) (quoting *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). "A district court may choose to consider only factors that are relevant to the settlement at hand." *Snook v. Valler Ob-Gyn Clinic, P.C.*, No. 14-cv-12302, 2015 WL 144400, at *1

(E.D. Mich. Jan. 12, 2015).

3.   **ARGUMENT & AUTHORITIES**

   A.   **The settlement resolves a bona fide dispute over FLSA issues.**

Before approving settlement of an FLSA claim, "'the Court must determine that the parties were engaged in a bona fide dispute and that the settlement is a fair and reasonable compromise of the issues presented.'" *Scobey*, 2021 WL 5040312 at *2 (quoting *Athan*, 523 F. Supp. 3d at 965)); *Lakosky v. Discount Tire Co., Inc.*, 2015 WL 4617186, at *1 (E.D. Mich. July 31, 2015). "A bona fide dispute has to do with whether some issue of the employer's liability is 'actually and reasonably in dispute.'" *Id.* (quoting *Snook v. Valley Ob-Gyn Clinic, P.C.*, No. 14-cv-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015)).

The Parties agree this case involves disputed issues of fact and law. Specifically, Plaintiffs allege they were required to remain on-duty during their unpaid meal periods, which renders those meal periods compensable under the FLSA. As such, Plaintiffs allege Peplinski denied them overtime wages when they incurred such on-duty, unpaid meal periods during weeks in which they worked over 40 hours. In contrast, Peplinski disputed these meal periods were compensable under the FLSA and disputes that the Plaintiffs were required to remain on-duty during such unpaid meal periods. As such, Peplinski alleges that Plaintiffs were properly paid for all hours worked. Peplinski also alleges it tried to comply with the FLSA in good faith, thereby limiting or prohibiting Plaintiffs from being able to recover liquidated damages. The Parties also disputed

whether, if at all, any alleged FLSA violations were willful and thus whether a two- or three-year limitations period applies to Plaintiffs' claims. Peplinski further disputed Plaintiffs' damages calculations.

Given the existence of disputed issues of law and fact, a jury could come to differing conclusions as to whether Plaintiffs' meal periods were compensable, how many meal periods were compensable, and, if so, whether Plaintiffs can extend the limitations period from two years to three and/or whether Plaintiffs can recover liquidated damages under 29 U.S.C. § 216(b). As such, the Settlement Agreement between the Parties is a reasonable resolution of bona fide disputes over FLSA liability and damages.

**B.     The settlement is within the range of possible recovery for Plaintiffs.**

The settlement provides Plaintiffs with a guaranteed monetary amount that is well within the range of their possible recovery in this case. Assuming for the sake of argument that Plaintiffs had won on the merits of their FLSA claims, they would still need to prove their damages. *See Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017). That would not be a simple or easy task where Plaintiffs would need to prove every unpaid meal period they took during a week in which they worked at least 40 hours should be compensable under the FLSA.

After exchanging informal discovery, including the Plaintiffs' timekeeping and payroll records, Plaintiffs calculated their best-day-at-trial, total potential overtime damages for the meal break claims as $53,794.23. This amount was calculated based on

a three-year statute of limitations look-back period, which would require Plaintiffs to not only prove liability, but also that Peplinski's alleged FLSA violations were willful.[1]

The Parties' Settlement Agreement results in a gross settlement amount of $89,500.00. After deducting amounts for attorneys' fees ($35,800.00), litigation costs ($1,170.30), and a reasonable service award for Skinner ($5,000.00), the net settlement amount is $47,529.70. This represents a recovery of 88.35% of the Plaintiffs' alleged best-day-at-trial overtime damages for their meal break claims. There is a non-zero possibility that, if Plaintiffs took their claims all the way to trial, they could potentially recovery nothing. As such, a settlement that guarantees a recovery of over 88% of their best-possible-day-at-trial damages is well within the reasonable range of Plaintiffs' potential damages and provides Plaintiffs with a guaranteed, valuable recovery here.

### C.   Settlement will dispense with future litigation expenses for all.

If a Settlement was not reached and the Parties were required to continue litigation, the disputed issues of law and fact would have resulted in substantial additional expense for both Parties, including engaging in formal written discovery, preparing for and taking depositions, filing and responding to various motions (including a motion to send court-authorized notice to absent potential opt-in plaintiffs, a motion to deem the Opt-in Plaintiffs "similarly situated" under 29 U.S.C. § 216(b),

---

[1]   The FLSA carries a standard two-year limitations period. *See* 29 U.S.C. § 255(a). If Plaintiffs can demonstrate Peplinski violated the FLSA "willfully" (which is a high burden), they would be able to extend the limitations period to three years. *Id.*

and/or dispositive motions), and preparing for and conducting a trial on the merits. The Settlement Agreement renders those concerns moot and result in substantial benefit for the Plaintiffs.

This case has undergone significant informal discovery efforts, which permitted the Parties to properly evaluate the possibilities of success as compared to the risks of continued litigation. While both Parties are confident of their positions on the merits, the ultimate question here is whether Plaintiffs are better served if the litigation is resolved and they receive compensation for their disputed claims, rather than spending time, energy, and expenses litigating their claims toward an (at this point of the case) uncertain result down the line. The risks posed by Peplinski's categorical denial of Plaintiffs' claims, as well as the dispute over whether Plaintiffs' meal periods are compensable at all under the FLSA, justifies a compromise which provides a certain and immediate settlement payment to Plaintiffs and provides Peplinski with peace-of-mind and avoidance of what would surely be expensive litigation costs and expenses if the case were to proceed through formal discovery, contentious motion practice, and briefing dueling dispositive motions.

If approved, the Parties will be resolving all of Plaintiffs' wage-and-hour claims. This settlement would resolve Plaintiffs' claims in this case and would result in a full and final dismissal of the entire lawsuit.[2] This factor weighs in favor of approval.

---

[2]   This settlement would only resolve Plaintiffs' individual claims, does not seek to release or resolve any other individuals' claims besides the Plaintiffs, and would not

**D.** **The settlement is the result of good faith, arm's-length negotiations between experienced wage-and-hour counsel; there was no fraud or collusion.**

The settlement was reached by way of good faith, arm's-length, and adversarial settlement negotiations. Both sides disputed the others' characterization of the fats and the ultimate merits. Both sides were represented by able counsel who are experienced in wage-and-hour litigation, who advised their respective clients on the potential pros, cons, risks, and rewards of continued litigation. In reaching the settlement, both sides continue to believe their respective side would ultimately prevail in the litigation but decided that it was more efficient and cost-effective to resolve Plaintiffs' claims before costs began to run wild with formal discovery and motion practice.

In further support that the settlement is the result of good faith, arm's-length negotiations and not the result of fraud or collusion, the settlement provides for terms that courts routinely find are reasonable and fair in FLSA settlements. For example, the settlement does not include a confidentiality clause that could offend what some view as the FLSA's objective of transparency. *See Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010); *Galvez v. Americlean Servs. Corp.*, No. 1:11cv1351 (JCC/TCB), 2012 WL 1715689, at *4 (E.D. Va. May 15, 2012). The settlement also does not seek to release claims beyond Plaintiffs' wage-and-hour claims, or any other claims that could have been asserted by Plaintiffs based on the facts alleged in the Complaint. *See O'Bryant*

---

adversely affect any absent potential opt-in plaintiffs.

*v. ABC Phones of North Carolina, Inc.*, No. 19-cv-2378, 2020 WL 7634780, at *4, 11 (W.D. Tenn. Aug. 4, 2020) (finding scope of release in FLSA case appropriate where the released claims "share a factual predicate with the allegations made by Plaintiffs[,]" and "[t]he scope of the [] release is appropriate because 'the release specifically cabins the categories of relinquished claims to those based upon or reasonably related to the pleadings and claims asserted in the Settlement Agreement'" (citation omitted)).

Moreover, in conducting these negotiations and reaching an agreement, the Parties were at all time represented by experienced and competent counsel in this litigation, and pursuant to the Settlement Agreement and in exchange for sufficient and reasonable consideration, Plaintiffs will voluntarily release all wage-and-hour claims against Peplinski, as well as abide by other standard non-monetary terms.

### E.   Skinner's requested service award is reasonable.

In recognition of her significant efforts in bringing this case forward, and in exchange for signing a general release of claims, Skinner is slated to receive a service award of $5,000.00 as part of the Settlement Agreement. Service awards are common as a method for courts to compensate named plaintiffs for shouldering the risks of litigation on behalf of others while forever associating their names with the litigation in the public record. *See Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

By bringing this litigation, Skinner triggered payment of back wages to Opt-in Plaintiffs in excess of 88% of their best-possible-day-at-trial overtime damages. Skinner

played a crucial role in answering questions of Plaintiffs' Counsel, providing valuable information about the challenged policies and practices at issue here, and the settlement. Skinner provided insight essential to understanding the meal break policies and practices at issue here, which resulted in an excellent recovery for 40 other Opt-in Plaintiffs. This favors approval of the requested service award. *See In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006). The amount sought for Skinner is approximately 5% of the gross settlement amount, which is abundantly reasonable. *See Sandoval-Osegura v. Harvey Pallets Mgmt. Grp., LLC*, No. 4:19-CV-00096-AGF, 2021 WL 2337614 (E.D. Mo. June 8, 2021) (noting the court previously approved a service award of $5,000 in FLSA and Rule 23 class action settlement where the gross settlement amount was $140,000); *compare, Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) (citing *In re Auto. Refinishing Paint Antitrust Litig.*, No. 1426, 2008 WL 63269, at *7-8, (E.D. Pa. Jan. 3, 2008) (approving a $30,000 award for each class representative); *McBean v. City of New York*, 233 F.R.D. 377, 391-92 (S.D.N.Y. 2006) (stating incentive awards of $ 25,000–$ 30,000 are "solidly in the middle of the range"); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 3008808, at *18 (D.N.J. Nov. 9, 2005) ($60,000); *In re Remeron End–Payor Antitrust Litig.*, No. Civ. 02-2007 FSH, Civ. 04-5126 FSH, 2005 WL 2230314, at *33 (D.N.J. Sept. 13, 2005) ($ 30,000); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) ($50,000); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 WL 34089697 (W.D. Wash. 2001) ($7,500 to $40,000)). Without such direct involvement of

Skinner, such a settlement would not be possible. As such, the requested service award should be approved as reasonable.

### F. Plaintiffs' requested attorneys' fees and costs are reasonable.

As noted above, as part of the settlement negotiations and in reaching the final agreement, the Parties included consideration of Plaintiff's attorneys' fees and costs to which Plaintiff's counsel is entitled. The Sixth Circuit has instructed that "[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in FLSA cases] encourages the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994); *see also Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 n. 16 (1981) ("To encourage employees to enforce their FLSA rights in court, and thus to further the public policies underlying the FLSA, Congress has permitted individual employees to sue for back wages and liquidated damages and to receive reasonably attorney's fees and costs" (internal citation omitted)). The FLSA requires that attorneys' fees and costs be reasonable. *See* 29 U.S.C. § 216(b). "A reasonable fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 45, 471 (6th Cir. 1999) (internal quotation marks omitted and alterations adopted).

Here, Plaintiff's counsel's portion of the award apportioned as attorneys' fees and costs is $36,970.30 of the $89,500 gross settlement amount (41.3% of the gross settlement). Courts have approved proportionally similar amounts as fair and reasonable in FLSA settlements close to this size. *See Shaffer v. Bridgeway Servs., LLC*, No.

2:20-cv-01361-JHE, 2022 WL 479411, at *3 (N.D. Ala. Feb. 16, 2022) (approving fees of $36,000 in FLSA settlement where gross settlement amount was $90,000); *Castro v. Early Learning Language Academies, LLC*, 2021 WL 915106, at *1 (D. Md. Mar. 9, 2021) (approving fees and costs of $36,000 in FLSA settlement where gross settlement amount was $90,000); *De Lopez v. Ozark Mountain Poultry, Inc.*, No. 5:13-CV-05272, 2015 WL 5679762, at *5 (W.D. Ark. Sept. 25, 2015) (approving fees of $50,898 in FLSA settlement where gross settlement amount was $90,000); *Chavez v. Excel Servs. Southeast, Inc.*, No. 13-cv-03299-CMA-BNB, 2015 WL 4512276, at *5 (D. Colo. July 27, 2015) (approving fees of $62,000 in FLSA settlement where net settlement amount to be paid to plaintiffs was $90,000). Indeed, fee award in similar cases tend to vary widely and, in some cases, result in attorneys' fees equaling or exceeding the amounts awarded to the plaintiffs. *See, e.g., Hernandez v. Choi*, No. TDC-13-3567, 2014 WL 6388333, at *6 (D. Md. Nov. 13, 2014) (awarding $90,000 in attorneys' fees where two plaintiffs each recovered over $30,000 in overtime wages and liquidated damages as part of settlement).

The requested amount is also below the lodestar amount of Plaintiff's counsel's fees incurred. Should the Court desire to review Plaintiff's counsel's billing records, the documents will be promptly provided to the Court for *in camera* review.

## 4.   CONCLUSION

Based on the foregoing, the Parties respectfully request the Court approve the Parties' settlement agreement and direct the Parties to exchange consideration.

Following consummation of the settlement, Plaintiffs will dismiss the case with prejudice.

Respectfully submitted on October 4, 2024 by:

/s/ William M. Hogg
Michael A. Josephson
Tex. SBN 24014780
Andrew W. Dunlap
Tex. SBN 24078444
William M. Hogg
Tex. SBN 24087733
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
tjones@mybackwages.com
mjosephson@mybackwages.com
adunlap@mybackwages.com
whogg@mybackwages.com

Richard J. (Rex) Burch
Tex. SBN 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

Jennifer McManus (P65976)
**FAGAN MCMANUS P.C.**
25892 Woodward Avenue
Royal Oak, Michigan
Tel: (248) 658-8951
jmcmanus@faganlaw.com

*Counsel for Plaintiffs*

/s/ Christopher P. Rubey
(w/ permission)
Christina M. Janice (P86372)
**BARNES & THORNBURG LLP**
171 Monroe Avenue, N.W., Suite 1000
Grand Rapids, Michigan 49503
Tel: (616) 742-3976
christina.janice@btlaw.com

Mark W. Wallin
**BARNES & THORNBURG LLP**
One N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
Tel: (312) 214-4591
mark.wallin@btlaw.com

Christopher P. Rubey (P85781)
**BARKES & THORNBURG LLP**
201 South Main Street, Suite 400
South Bend, Indiana 46601-2130
Tel: (574) 237-1106
crubey@btlaw.com

*Counsel for Defendant The Peplinski Group, Inc.*

-13-