**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**
*Skinner v. The Peplinski Group, Inc.*
**Case No. 23-cv-10495**

# EXHIBIT 1
## (fully executed)

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

The parties to this Settlement Agreement and Release of Claims (the "Agreement") are The Peplinski Group, Inc. ("Peplinski" or "Defendant") and Dawn Skinner ("Skinner"), on behalf of herself and the other individuals who have consented to join this action, who are listed in Exhibit A, incorporated into this Agreement (collectively with Skinner, the "Plaintiffs").

### RECITALS

WHEREAS, on February 28, 2023, Skinner sued Peplinski in the lawsuit styled *Skinner v. The Peplinski Group, Inc.*, Case No. 23-cv-10495, in the United States District Court for the Eastern District of Michigan (the "Lawsuit") asserting claims for alleged unpaid overtime wages under the Fair Labor Standards Act ("FLSA").

WHEREAS, on March 2, 2023, thirty-eight (38) individuals submitted their written consents to join the action as party plaintiffs pursuant to 29 U.S.C. § 216(b). *See* ECF No. 5.

WHEREAS, on July 20, 2023, two (2) additional individuals submitted their written consents to join the action as party plaintiffs pursuant to 29 U.S.C. § 216(b). *See* ECF No. 21.

WHEREAS, to date, there has been no order "conditionally certifying" the action as a collective action under 29 U.S.C. § 216(b) or otherwise authorizing notice to be sent to other potential opt-in plaintiffs.

WHEREAS, the opt-in plaintiffs who elected to join the Lawsuit submitted written consents, which allowed Skinner, and her chosen attorneys, to prosecute this case, including entering into a binding settlement agreement concerning all matters pertaining to this lawsuit.

WHEREAS, Defendant vigorously and expressly denies the allegations in the Lawsuit and all liability and damages of any kind to Plaintiffs and anyone else with respect to the alleged facts and causes of action asserted in the Lawsuit, but nonetheless, without admitting or conceding any liability or damages whatsoever, has agreed to resolve the Lawsuit on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing the Lawsuit.

WHEREAS, the parties have been, and are, engaged in a good faith and bona fide dispute about the number of hours worked by Plaintiffs during various work weeks, and the amount, if any, of wages owed to the Plaintiffs under the FLSA.

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a result through the litigation process would require substantial additional risk, discovery, time, and expense.

WHEREAS, the parties engaged in arm's-length settlement negotiations over Plaintiffs' wage claims.

WHEREAS, prior to conducting such negotiations, the parties engaged in substantial investigation, including formal and informal discovery, production of relevant documents and disclosure of information (including timekeeping and payroll information), and thereby arrived at an agreement to resolve the Lawsuit on the basis described in this Agreement.

WHEREAS, the Parties have conducted an investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the resolution of the Lawsuit as provided in this Agreement is in their best interests and that the terms set forth in this Agreement represent and constitute a fair, reasonable, and adequate resolution of the Lawsuit.

NOW, THEREFORE, the Parties, intending to be legally bound, and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

### SETTLEMENT TERMS

1. **Gross Settlement Amount.** In exchange for (a) the dismissal of Plaintiffs' claims alleged in the Lawsuit with prejudice; and (b) the execution of this Agreement by Skinner on behalf of herself and each of the other plaintiffs, Defendant agrees to pay the gross amount of **Eighty Nine Thousand Five Hundred U.S. Dollars and Zero Cents ($89,500.00)** (the "Settlement Amount"), to resolve Plaintiffs' claims.

2. **Plaintiffs' Checks.** Defendant will pay each Plaintiff the gross amount listed for such individual in Exhibit A to this Agreement, via individual checks payable to each such Plaintiff (the "Settlement Checks"). The Settlement Checks shall be delivered to the office of Josephson Dunlap LLP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046, by no later than the close of business on the 21st day after either the later of: (a) the Court has approved the parties' settlement as reflected in this Agreement in accordance with Section 17 of this Agreement; or (b) Defendant receives Plaintiffs' Counsel and Skinner's necessary tax documents. Within seven (7) calendar days after Plaintiffs' counsel receives the Settlement Checks, Plaintiffs' Counsel shall mail to each Plaintiff a package containing (a) that Plaintiff's Settlement Check(s); and (b) the notice attached hereto as Exhibit B.

3. **Tax Withholding.** Fifty percent (50%) of the gross amount listed for each Plaintiff in Exhibit A to this Agreement is being paid for alleged overtime wages, will be subject to applicable withholdings required by law and will be reported on a Form W-2 subject to regular payroll tax deductions. The other fifty percent (50%) of the gross amount listed for each Plaintiff in Exhibit A to this Agreement is being paid for alleged liquidated damages and/or interest penalties, will not be subject to payroll or other tax withholdings, and will be reported on a Form 1099. Defendant shall be responsible for employer's share of the payroll taxes in addition to the total Settlement Amount.

Five Thousand Dollars and Zero Cents ($5,000.00) of Skinner's settlement amount listed in Exhibit A shall constitute a service award intended to compensate Skinner for her efforts in bringing and prosecuting the Lawsuit, and is also meant to compensate Skinner in exchange for a wider release of claims, and taxes shall not be withheld from this portion of her settlement amount. Defendant shall issue Skinner a Form 1099 for this service award payment.

Within thirty (30) days of the date upon which Skinner executes this Agreement, Plaintiffs' Counsel and Skinner will provide Defendant's Counsel a completed, signed Form W-9.

4. **Attorneys' Fees and Costs.** As part of the Settlement Amount, Defendant shall deliver a check payable to Josephson Dunlap LLP ("Plaintiffs' Counsel") for Thirty Six Thousand Nine Hundred Seventy U.S. Dollars and Thirty Cents ($36,970.30) (the "Attorneys' Fees and Costs Payment") representing Thirty Five Thousand Eight Hundred U.S. Dollars and Zero Cents

($35,800.00) for attorneys' fees and One Thousand One Hundred Seventy U.S. Dollars and Thirty Cents ($1,170.30) for costs/litigation expenses. The Attorneys' Fees and Costs Payment shall be delivered when the Settlement Checks are due. This fully satisfies any request for attorneys' fees and costs/expenses by Plaintiffs' counsel.

The settlement is not conditioned on approval of Plaintiff's Counsel's Attorneys' Fees and Costs Payment. To the extent that the Attorneys' Fees and Costs Payment are not approved by the Court, the amounts of the application that are not approved shall be reallocated for the benefit of the Plaintiffs.

5.  **Court Approval and Dismissal Process.** Within seven (7) calendar days after Skinner and Defendant have executed this Agreement, the parties shall file a joint motion seeking final approval of the settlement reflected in this Agreement and dismissal of Plaintiffs' claims with prejudice. If the Court requires additional documentation, the parties agree to work together to provide such documentation. The parties agree to seek to have this Agreement approved as is, without modification of any portion of the Agreement by the Court. In the event the Court does not initially approve this settlement, the Parties agree to work cooperatively and in good faith to attempt to resolve any issues therein within 14 calendar days of any Court Order refusing to enter the settlement. If the Court ultimately and with finality fails to approve this settlement, the settlement shall be null and void and is not admissible in any other proceeding or action. If the Court fails to approve this Agreement, the Parties reserve all rights, claims, and defenses.

6.  **Plaintiffs' Release.** Plaintiffs, on behalf of themselves and their respective assigns, heirs, and legal representatives, agree to waive, release, discharge, and surrender, and do hereby waive, release, discharge, and surrender, all wage and hour claims, causes of action, rights, and demands, including any claims for wages, overtime, distributions, compensation, expenses, interest, actual or compensatory damages, liquidated damages, punitive damages, attorney's fees, and costs against the Released Parties (as defined herein) arising from February 28, 2020 (*i.e.*, three years prior to the filing of the Original Complaint) through the date the Court approves this agreement, and including without limitation the claims in the Lawsuit and any claims that could have been asserted based on the facts alleged in the Lawsuit whether known or unknown.

The Settlement Checks issued to Plaintiffs will contain the following release language on the back of the check:

> I knowingly and voluntarily release, waive, and discharge The Peplinski Group, Inc., and all other Released Parties, from any and all federal, state, and local wage-and-hour claims of any nature whatsoever that accrued during my employment working at The Peplinski Group, Inc. and/or any Released Party between February 28, 2020 and the date I endorse this payment, including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs.

By negotiating the settlement check, all Plaintiffs are fully bound by the release described in this Agreement.

Additionally, in exchange for the additional consideration of her Service Award, Skinner (on behalf of herself only) agrees to release Released Parties from any and all claims, whether known or

unknown, that she may legally release/waive to the greatest extent possible arising from the beginning of her employment through the date the Court approves this agreement. As used herein, "Released Parties" shall mean and collectively refer to Defendant and all of its past, present, and future, insurers, benefit plans, predecessors, successors, transferees, assigns, parent companies, subsidiaries, affiliates, and their owners, officers, directors, managers, members, agents, employees, and attorneys (hereinafter collectively referred to as the "Released Parties").

7. **Taxes.** Plaintiffs agree that, except with respect to tax amounts withheld from payments made to Plaintiffs, and which Defendant will forward to the Internal Revenue Service and any applicable state taxing authority, as required, Plaintiffs are fully and solely responsible for any and all liability for any taxes, interest, or related penalties or assessments Plaintiffs may incur in connection with the settlement encompassed by this Agreement.

8. **No Tax Advice.** No party to this Agreement is relying on another party or their Counsel for tax advice.

9. **Full Payment.** The Settlement Amount being paid pursuant to this Agreement constitutes full payment to Plaintiffs of all wages allegedly due and owing as claimed in the Lawsuit as well as all attorney's fees and costs.

10. **No Admission of Liability.** Neither the making of this Agreement nor the tender of consideration described in this Agreement will be construed as an admission of liability or wrongdoing by Defendant or any of the Released Parties, and Defendant denies any such liability or wrongdoing. Further, in the event that, for any reason, this Agreement does not result in the full and complete resolution of the Lawsuit, the parties agree that this Agreement is not meant to be, and will not be, construed as an admission that Defendant is liable for any alleged back wages, minimum wages, overtime, liquidated damages, punitive damages, or any other damages, attorneys' fees, or costs.

11. **Knowing and Voluntary Waiver.** Skinner acknowledges and agrees that she has had enough time to consider this Agreement and to consult with legal counsel considering its meaning and significance. When entering into this Agreement, Skinner has not relied on any representations or warranties made by Defendant or any of the Released Parties, other than representations and warranties expressly set forth in this Agreement.

12. **Amendments/Modifications.** No waiver, modification, or amendment of the terms of this Agreement shall be valid or binding unless in writing, signed by Skinner on behalf of Plaintiffs, and signed by Defendant, and then only to the extent set forth in such written waiver, modification, or amendment. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of the Agreement.

13. **Binding Agreement.** This Agreement shall be binding upon, and inure to the benefit of, the parties and their agents, employees, beneficiaries, heirs, executors, administrators, estates, successors, and assigns, and shall further inure to the benefit of each of the Released Parties, each of which is a third-party beneficiary of this Agreement. The signatories to this Agreement hereby represent they are fully authorized to enter into this Agreement and to bind the parties hereto to the terms and conditions hereof, including that Skinner is fully authorized to enter into this Agreement

on behalf of each of the Plaintiffs and to bind each of the Plaintiffs to the terms and conditions hereof. All parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared and executed this Agreement.

14. **Inadmissibility of Settlement Agreement**. Except for purposes of (a) settling the Lawsuit or (b) enforcing this Agreement, neither this Settlement Agreement, nor its terms, nor any document, statement, proceeding, or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication, or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession, or damage.

15. **Entire Agreement/No Reliance.** This Agreement, including Exhibits A and B, constitutes the entire agreement of the parties concerning the subjects contained herein and supersedes/replaces any previous agreement. The parties acknowledge the contested and adversarial nature of the lawsuit and stipulate that in executing this Agreement they are not relying on any representation by any other party, its/his agents, representatives or attorneys with regard to (1) facts underlying the lawsuit, (2) the subject matter or effect of this Agreement, or (3) any other facts or issues which might be deemed material to the decision to enter into this Agreement, other than as specifically set forth in this Agreement.

16. **Mutual Enforceability.** Plaintiffs, either individually or collectively, shall be entitled to enforce this Agreement and this Agreement shall be binding upon and enforceable against each of the Plaintiffs and their respective beneficiaries, heirs, executors, administrators, estates, successors, and assigns, as applicable.

17. **Choice of Law/Venue.** This Agreement is made and performable in Bay County, Michigan (*i.e.*, the Northern Division of the U.S. District Court for the Eastern District of Michigan), and shall be governed by and construed in accordance with the laws of the State of Michigan, without regard to conflicts of laws principles. Any action or proceeding by either of the parties to enforce this Agreement shall be brought only in federal court located in the Eastern District of Michigan, Northern Division. The parties hereby irrevocably submit to the exclusive jurisdiction of such court and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

18. **Disputes.** The parties agree to attempt to resolve any dispute that may arise with regard to the interpretation or performance of this Agreement or any of its provisions by phone conference prior to bringing an enforcement or declaratory action. If a party refuses to confer in good faith to resolve the dispute, then that party may not recover attorneys' fees or costs in any litigation brought to construe or enforce this Agreement. Otherwise, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs, including the cost of mediation.

19. **Captions.** The captions or headings of the sections/paragraphs of this Agreement are inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

20. **Signatures.** Any party may execute this Agreement by signing electronically or by manual hand signature on the designated signature block below, and transmitting that signature page

via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile, email, or other electronic method for executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, email, or other electronic method. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

**[SIGNATURE PAGE FOLLOWS]**

**THE PEPLINSKI GROUP, INC.**

Date: Oct 07, 2024          By: *Rick Ackerman*

                            Printed Name: Rick L. Ackerman

                            Title: Chief Operating Officer


**ON BEHALF OF HERSELF AND ALL OTHER PLAINTIFFS:**

Date: Oct 1, 2024           By: *Dawn Skinner (Oct 1, 2024 14:51 EDT)*
                                Dawn Skinner